## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SAMUEL DRINKERT,

      Petitioner,

      v.                             Case No. 22-3045-JWL

COLONEL MICHAEL JOHNSTON[1],

      Respondent

## MEMORANDUM AND ORDER

This matter comes before the court on a petition for habeas corpus filed under 28 U.S.C. § 2241. Petitioner, a prisoner at the United States Disciplinary Barracks (USDB), Fort Leavenworth, challenges his convictions by a court-martial, alleging the military courts applied improper legal standards when they affirmed his convictions based upon improper hearsay.

### Procedural History

Petitioner was convicted on June 4, 2019, of three specifications of sexual assault in violation of the Uniform Code of Military Justice (UCMJ) Article 120 and one specification of indecent video recording in violation of UCMJ Article 120c. The crimes were committed against two victims, identified as Ms. F. and Ms. W.

After a sentencing hearing, petitioner was sentenced to a term of 15 years and a dishonorable discharge.

Petitioner unsuccessfully pursued clemency and then sought review in the Navy-Marine Corps Court of Criminal Appeals (NMCCA). He alleged the admission of the prior consistent

---

[1] The court substitutes Colonel Michael Johnston as the appropriate respondent in this matter. Colonel Caroline Horton, named on the petition, was replaced on July 24, 2020.

statements of Ms. F. and Ms. W. was error, and he challenged the search and seizure of his cell phone and the admission at trial of information taken from it. The NMCCA agreed that the search and seizure of the phone was in error, but it found no prejudice because the same information was retrieved from petitioner's laptop, which was seized incident to a search of his home under a search warrant. However, the NMCCA rejected petitioner's challenge to the admission of the prior consistent statements of Ms. F. and Ms. W.  He now proceeds on that claim.

## Factual Background

The NMCCA summarized the relevant facts as follows:

Appellant's convictions arise out of separate incidents involving two victims, his brother's ex-girlfriend, Ms. F., and a co-worker, Ms. W.

The incident involving Ms. F. occurred in August 2017 when Ms. F. visited Appellant and his brother at their residence in Virginia Beach, Virginia. After an evening spent consuming alcohol and playing games, Appellant's brother and Ms. F. became sick and went to the bathroom to vomit. A short time later Appellant went into the bathroom and assisted his brother to a bedroom. Appellant then returned to the bathroom, found Ms. F. kneeling on the floor, and penetrated Ms. F.'s vulva with his finger and attempted to engage in sexual intercourse with her while she said "no" and resisted. At that point Appellant assisted Ms. F. to one of the vacant bedrooms and told her he would leave her alone.

After being brought into the bedroom, Appellant's brother testified that "the next thing I remember was [Ms. F.] screaming 'no,' and shortly after that, [Appellant] came into my room and said he thinks that he tried to rape her." A short time later Ms. F. became enraged, yelled at Appellant, broke household items, and later grabbed a kitchen knife and cut her own arm. Appellant's brother provided aid to Ms. F. and Appellant called 911 for emergency assistance. During the 911 call Appellant made incriminating statements, including the statement, "I believe I tried to rape her." Appellant made further admissions to the responding police officers and to the detective who interviewed him later that morning, admitting that he penetrated Ms. F.'s vagina with his finger and "probably should've stopped." Ms. F. was taken to a hospital where she was interviewed and told investigators about the assault.

The incidents involving Ms. W. occurred several months later in March and April 2018 at the same residence, where Ms. W., a co-worker and friend of

Appellant, spent a significant amount of time due to her unstable housing situation. On 30 March 2018, Appellant, Ms. W., and a mutual friend were at the house consuming alcohol and socializing. Ms. W. became sleepy and woke up the next morning in Appellant's bed (when he brought her breakfast). On 3 April 2018, Ms. W. and Appellant were again at Appellant's residence drinking and socializing. Ms. W. eventually became tired and went to bed. While her memory became hazy, she recalled being in Appellant's bedroom prior to falling asleep and awoke early the next morning with Appellant's penis inside her vagina. She feigned being asleep while Appellant ejaculated inside of her, cleaned her with baby wipes, put her underwear on, and left for work. When Ms. W. confronted Appellant about the incident a few days later over a messaging application, and told him she was avoiding him because "[y]ou raped me," Appellant initially replied, "What?" and "You don't remember do you?" She then told him she did remember, including that he had "baby wipe [sic] and put everything back how it was," that he was "wrong," and that she did not want to see him again, to which Appellant responded, "I understand."

On 16 April 2018, after Ms. W. had provided a statement to the Naval Criminal Investigative Service [NCIS] alleging that Appellant had sexually assaulted her on 30 March and 4 April, five Virginia Beach Police officers with the assistance of two NCIS agents executed a civilian search warrant at Appellant's residence. The warrant permitted law enforcement to search for and seize evidence to include "cellular phone / electronics which can take photographs an[d] any media storage devices, to include USB, disks, tablets, laptop and desktop computers." The search warrant did not authorize searching Appellant's person.

When the search began, Appellant was not at his residence, as he was in the process of being discharged from the hospital after nine days of involuntary mental health treatment at Naval Medical Center Portsmouth. At the request of NCIS, immediately after being discharged, Appellant was escorted from the Medical Center to the residence by two members of his command. The NCIS agent was "certain" or "pretty sure [Appellant] had his phone on him" when he asked the command to escort him to the residence. Upon his arrival, Appellant found his residence in the process of being searched and was asked by NCIS to enter the residence. The NCIS agent placed his hand on Appellant's back, guided him to the door, and once inside, directed Appellant to empty his pockets "for officer safety." Appellant removed his wallet and cell phone from his pockets and was then guided to the kitchen where he was directed to place his cell phone and wallet on a table and take a seat. At that point, the NCIS agent and a detective from the Virginia Beach Police explained the purpose of the search warrant, and the NCIS agent provided Appellant with a permissive authorization for search and seizure [PASS] form for his cell phone. The NCIS agent read the PASS form to Appellant and told Appellant he had a constitutional right to refuse the search. Appellant then signed the PASS authorizing the search and seizure of his cell phone. After seizing the cell phone and noticing it was locked, the NCIS agent asked Appellant for the passcode which Appellant provided.

> A forensic review of the phone revealed photographs taken on 3 April 2018, to include one depicting a finger penetrating Ms. W.'s vagina. There was another photo of Ms. W. while she appeared to be asleep, a photo of Ms. W. topless, and search terms related to Ms. W. Pursuant to the search warrant, law enforcement also seized Appellant's laptop computer. The forensic review of the computer revealed the same photographs, as well as search terms related to Ms. W. Evidence existing on the phone, but not the computer, included a specific search for "[Ms. W.] naked," as well as searches related to whether one could get pregnant on birth control. All the other evidence from the laptop computer, to include the digital penetration photo, contained metadata which showed the time and location where the photos were taken, as well as the device used to take them.

*United States v. Drinkert*, 81 M.J. 540, 545–47 (N-M. Ct. Crim. App.), *review denied*, 81 M.J. 426 (C.A.A.F. 2021)(Footnotes omitted).

The government's witnesses in its case in chief included the two assault victims, petitioner's brother, Construction Mechanic Third Class (CM3) Juliet, EOCN Moore, and law enforcement and medical personnel. Both the government and the defense called expert witnesses concerning the effect of alcohol on memory. The defense presented only a forensic psychologist in its case in chief.

*Ms. F's testimony*

 After Ms. F. testified at trial, defense counsel cross-examined her about her memory of the incident with petitioner and inconsistences between her statements to law enforcement and at trial. Defense counsel asked Ms. F. whether she told law enforcement that she heard petitioner unbuckle his shorts and heard his pants come down. On redirect, the government asked Ms. F. if she told law enforcement that petitioner had pulled down her shorts and underwear in the bathroom. Defense counsel objected to this questioning, but the military judge held that while Ms. F. was not questioned by the defense about petitioner's handling of her shorts and underwear, the question was permissible to rehabilitate her credibility under Mil. R. Evid. 801(d)(1)(B)(ii).

4

*Ms. W's testimony*

After the incident with petitioner, Ms. W. sought a civilian protective order against him. During that process, she spoke with CM3 Juliet about the incident with petitioner. Approximately three weeks later, Ms. W. was placed under oath and answered questions at a hearing. At petitioner's trial, defense counsel cross-examined Ms. W. about additional facts that were not presented in the protective order hearing. CM3 Juliet then was allowed to testify over defense counsel's objection regarding statements Ms. W. made prior to the protective order hearing that were consistent with her testimony at petitioner's trial. The military judge found the testimony was permissible under Mil. R. Evid. 801(d)(1)(B)(i) as a prior consistent statement to rebut an express or implied charge of recent fabrication, influence or motive and to rehabilitate Ms. W.'s credibility as a witness under Mil. R. Evid. 801(d)(1)(B)(ii).

## Standard of review

A federal court may grant habeas corpus relief where a prisoner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). However, a federal court's review of court-martial proceedings is limited. *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670 (10th Cir. 2010). The Supreme Court has explained that "[m]ilitary law, like state law, is a jurisprudence which exists separate from the law which governs in our federal judicial establishment," and "Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Nixon v. Ledwith*, 635 F. App'x 560, 563 (10th Cir. Jan. 6, 2016) (unpublished) (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953)). "[W]hen a military decision has dealt fully and fairly with an allegation raised in [a habeas] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the

evidence." *Thomas*, 625 F.2d at 670 (quoting *Burns*, 346 U.S. at 142). Instead, it is the limited

function of the civil courts "to determine whether the military have given fair consideration to

each of the petitioner's claims." *Id.* (citing *Burns*, 346 U.S. at 145).

For claims that were presented to the military courts, this court must determine whether

those courts "fully and fairly reviewed" each claim. *Id.* If a claim was presented but not given

full and fair consideration, then "the scope of review by the federal civil court

expand[s]." *Id.* (citing *Lips v. Commandant*, 997 F.2d 808, 811 (10th Cir. 1993)).

The Tenth Circuit has recognized a four-part test to aid in determining whether the claims

were fully and fairly considered:

> To assess the fairness of the consideration, our review of a military conviction is
> appropriate only if the following four conditions are met: (1) the asserted error is
> of substantial constitutional dimension, (2) the issue is one of law rather than
> disputed fact, (3) no military considerations warrant a different treatment of
> constitutional claims, and (4) the military courts failed to give adequate
> consideration to the issues involved or failed to apply proper legal standards.

*Squire v. Ledwith*, 674 F. App'x 823, 826 (10th Cir. 2017) (unpublished) (quoting *Thomas*, 625

F.3d at 670–71) (citing *Dodson v. Zelez*, 917 F.2d 1250, 1252–53 (10th Cir. 1990)).

The Tenth Circuit has recognized "the fourth consideration as the most

important." *Squire*, 674 F. App'x at 826 (quoting *Thomas*, 625 F.3d at 671). "An issue has been

given full and fair consideration when it has been briefed and argued at the military court, even if

that court summarily disposed of the issue." *Williams v. Ledwith*, 671 F. App'x 719, 721 (10th

Cir. 2016) (unpublished) (citing *Roberts*, 321 F.3d at 997; *Watson v. McCotter*, 782 F.2d 143,

145 (10th Cir. 1986)); *see also Squire*, 674 F. App'x at 826 ("Even a military court's summary

disposition of a claim can show adequate consideration of the issues involved."); *Burke v.*

*Nelson*, 684 F. App'x 676, 680 (10th Cir. 2017) (unpublished) (citing *Watson*, 782 F.2d at 145)

("[W]hen it comes to court-martial rulings on constitutional claims, our review is sharply limited: so long as the claim was briefed and argued before a military court, we must deny the claim.").

Petitioner has the burden to show that the military review was "legally inadequate" to resolve his claims. *Williams*, 671 F. App'x at 721 (citing *Watson*, 782 F2d at 144 (quotation omitted)).

## Analysis

Under Mil. R. Evid. 801(d)(1)(B), prior consistent statements are not hearsay if the declarant testifies and is subject to cross-examination, so long as the statements are offered "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Mil. R. Evid. 801(d)(1)(B).

The record shows that the NMCCA thoroughly examined petitioner's claim of error concerning the admission of prior consistent statements under Mil. R. Evid. 801. First, it correctly identified abuse of discretion as the appropriate standard of review. *United States v. Drinkert*, 81 M.J. 540, 553 (N.M.C.C.A. 2021)(citing *United States v. Finch*, 79 M.J. 389, 394 (C.A.A.F. 2020)).

Next, the NMCCA properly explained the admission of prior consistent statements under Mil. R. Evid. 801(d)(1)(B).

The NMCCA carefully parsed the testimony offered at trial and the consistent prior statements offered by the government in response to the cross-examination of each victim. It explained that Ms. F's credibility was challenged on a ground other than recent fabrication or influence when she was questioned on differences between her statements to law enforcement

and her trial testimony, essentially a challenge to her memory of the assault. It found the prior statement was properly admitted under Mil. R. Evid. 801(d)(1)(B) to show her memory was reliable and unchanged. *Drinkert*, 81 M.J. at 553.

Likewise, the NMCCA found that Ms. W's prior consistent statements were properly admitted under Mil. R. Evid. 801(d)(1)(B), finding the testimony by CM3 Juliet to present consistent statements made by Ms. W. three weeks prior to the civilian hearing was admissible to rebut any charge of recent fabrication or motive. The NMCCA also found that the prior statement was admissible to rehabilitate Ms. W's credibility. *Id*. at 553-54.

Having considered the record under the narrow standard of review that applies to a decision rendered in the military courts, the court concludes this matter was given the full and fair consideration contemplated by precedent in the Tenth Circuit. The court finds no basis to grant relief based on the admission of the statements in question and will deny relief.

THE COURT THEREFORE ORDERS that the petition for habeas corpus is dismissed and all relief is denied.

IT IS SO ORDERED.

Dated: August 24, 2022                          /s/  John W. Lungstrum
                                                JOHN W. LUNGSTRUM
                                                UNITED STATES DISTRICT JUDGE